UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Madelyn Dimitracopoulos,<br><br>                    Plaintiff,<br><br>        – against –<br><br>THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF EDUCATION, CARL HUDSON, former principal of Flushing High School; MAGDALEN RADOVICH, former principal of Flushing High School; GISELE MORGAN, assistant principal of English of Flushing High School, DR. JAMES BROWN, current principal of Flushing High School,<br><br>                    Defendants. | **MEMORANDUM AND ORDER**<br><br>14-CV-674<br><br> |



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 0 4 2014 ★

BROOKLYN OFFICE

**Appearances:**

For Plaintiff

>        Bryan D. Glass
>        Glass Krakower LLP
>        100 Church street, 8th Fl.
>        New York, NY 10007

For Defendants

>        Jay Y. Kim
>        New York City Law Department
>        100 Church Street, Rm 2-188
>        New York, NY 10007

**JACK B. WEINSTEIN, Senior United States District Judge:**

I.     Introduction ...................................................................................................................2
II.    Setting of Controversy ....................................................................................................3
III.   Facts .................................................................................................................................5
          A.   2009 Litigation ...................................................................................................6
          B.   2011-2012 School Year .....................................................................................6



1

C.    2012-2013 School Year ..................................................................6
D.    2013-2014 School Year ..................................................................7
E.    Co-Teaching .................................................................................8
IV.    Standard of Review ..................................................................................8
V.    Claims Against the City Dismissed ........................................................10
VI.    Statute of Limitations ..............................................................................10
A.    Statutes of Limitations ................................................................10
1.    ADEA .................................................................................10
2.    Section 1983 ......................................................................10
3.    NYSHRL & NYCHRL ........................................................11
4.    Continuing Violations Doctrine ........................................12
B.    Plaintiff's Claims Are Partially Time Barred ..............................13
VII.    Federal Age Discrimination Claims .......................................................14
A.    Law ...............................................................................................14
B.    Application of Law to Facts ........................................................15
1.    Limited Adverse Employment Action Adequately Alleged ............15
2.    Inference of Discrimination ..............................................18
VIII.    State Age Discrimination Claims ............................................................20
IX.    City Age Discrimination Claims .............................................................21
X.    Retaliation Claims ..................................................................................22
A.    Law ...............................................................................................22
B.    Application of Law to Facts ........................................................23
XI.    Surviving Claims .....................................................................................24
XII.    Pretrial and Trial Instructions ................................................................25

## I.    Introduction

Plaintiff Madelyn Dimitracopoulos brings employment discrimination claims for discrimination on the basis of age against the City of New York, New York City Department of Education ("DOE"), Carl Hudson, Magdalen Radovich, Gisele Morgan, and James Brown.  *See* Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; U.S. Const. Am. XIV, 42 U.S.C. § 1983; New York State Human Rights Law ("NYSHRL"), New York Executive Law §290 *et seq.*; New York City Human Rights Law ("NYCHRL"), New York City Administrative Code  8-101 *et seq.*

To avoid excessive denial of jury trials on the basis of pleading inadequacies and summary judgments, the court followed its current practice in discrimination cases:  plaintiff and a knowledgeable representative of defendants appear for questioning by the judge on argument

of motions to dismiss on the pleading or summary judgment. A "mini-trial" is conducted by the court relying on "judicial experience and common sense" as required by *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 180 (2d Cir. 2013). Here the conclusion of the court was that a jury might justifiably accept plaintiff's story of discrimination based on her age.

Defendants' motion to dismiss the complaint for failure to state a claim is granted in part and denied in part. *See* Fed. R. Civ. P. 12(b)(6). The case is set down for trial on November 17, 2014 at 10:00 a.m. on limited issues. After prompt discovery limited by the magistrate judge defendants may move for full or partial summary judgment. *See infra* Part XII.

## II.     Setting of Controversy

The controversy illuminates one of the current crises being played out in schools. In this case it takes the form of a legal claim of discrimination against a teacher based on her age.

Sitting across a table in the well of the courtroom were two antagonists in the proceeding—plaintiff and a named defendant, Gisele Morgan. Plaintiff is a woman of 72, occidental, fiercely proud of her 52 years of dedicated teaching, who has chosen to try to help economically disadvantaged students in a minority-dominated high school. Defendant is an African American assistant principal at the top of her administrative skills passionately trying to provide a superior education in a school viewed by many as failing; she insists on teachers using currently approved "modern" pedagogical methods, applying present views of appropriate teacher supervision. During the hearing, the following statements were made with deep feeling by these parties:

> **Plaintiff [Madelyn Dimitracopoulos, English Teacher]:**
> I would like to continue on as long as I am physically fit and mentally fit. I didn't want to take the buy-out. They said if I leave by June 30th we get all the retroactive pay. But I don't think I want to be lured by money because I love my job and I love my students. . . .

3

Well, I really didn't want to speak about the money issue, but everybody – it's clear that I make a top salary with two Masters. . . . And so I do follow all of their directives, all the new rubrics, all the new terminology, and I get no credit for what I'm doing while accolades are heaped on the younger teachers who quite often take their lesson plans from the Internet, but I make my lesson up every day.

I really don't know. I think it's policy because my peers in the schools that are over 55 and 60 are going around crying and taking blood pressure pills because they're experiencing similar ineffective ratings and things that go to the heart of who you are as a person, what you've been doing all your life.

For 52 years I've never been told that I am physically unfit. While I respect Ms. Morgan because she's always spoken with me in a respectful way, to be able to write on a paper that I show favoritism or I'm culturally unaware of my students' background. I have a totally culturally diverse family. I selected Flushing High School because of its diversity.

To be told in writing that I don't know grammar, syntax, and academic vocabulary, strikes at the core of who I am and what I've been doing at Flushing for 52 years. And the students that come back to me and thank me, to let me know how successful they are, it doesn't make sense. And it's very hurtful.

Hr'g Tr. 32:18-34:11

**Defendant [Gisele Morgan, Assistant Principal of English of Flushing]:**

What I observed are unsatisfactory practices in the classroom. . . . For example, in reference to what Ms. Dimitracopoulos stated about showing favoritism, that language is taken directly from a teaching rubric that supervisors use. In that instance, she had disciplined certain students and avoids disciplining other students.

So what I observed in my snapshots in the classroom, especially with classroom management and instruction, it's not coherent in her style. I have also noted she is knowledgeable, but inside the classroom there's instructional issues. . . . According to how she lays out her plan, with time management, with time constraint, teaching to a diverse group of students who have [other] disability issues [as well as] . . . . learning disabilities. We are inclusive classroom, inclusive structure. We have general education students. Students of second languages. As well as students with disabilities. And there are issues . . . [plaintiff's] teaching style to attend to those students. . . .

For example, when you are teaching literature to a diverse group of students, you need to have multiple entry points for each student. So a student who is speaking another language, you have to have different manipulatives for that student. As well as the student who had a learning disability, you have to have certain manipulatives. And Ms. Dimitracopoulos teaches to the whole class one method.

Hr'g Tr. 34:15-35:24.

**Plaintiff:**

I just want to take exception to the point that Ms. Morgan made about my not being sensitive to the learning issues that my students have. I have been

4

assigned these special inclusion co-teaching classes for three years consecutively. . . . But if I were insensitive, why would I be assigned one year after another? I'm very sensitive to that issue.

Also, YABC [a student assistance program from which I was for a time excluded] is not an after school program. It's an accredited academic program where students that are on the verge of dropping out come back to school and, with my help and the help of the YABC program . . . they are able to graduate when they do the work. I've gotten all S's for eight years straight. I've been there since its inception.

In terms of those three [unsatisfactory ratings], the first two by Mr. Hudson who had to resign from the system . . . . With Ms. Radovich, the U has not been challenged yet because there's a waiver. Because I'm challenging a write-up that Ms. Morgan gave me and we're going to step two with the union.

And this year, I'm trying very hard to get a satisfactory. . . . So I'm hoping we can resolve this matter. And as I say, we're all trying to be very fair, but I do wish to continue my career at Flushing, as I have for the past 52 years, because I'm doing my best to assimilate everything that's being given to me and go to all these . . . meetings and listen to Ms. Morgan's suggestions how to improve my teaching. I hope to go on and not have to stop.

Hr'g Tr. 40:5-41:12

**Defendant:**

Your Honor, it's my position to support teachers when they receive unsatisfactory ratings. For the past two years, three years, we've been working with Ms. Dimitracopoulos, with myself, the help of lead teachers.

We made appointments during her availability at the end of the day to work one-on-one with coaches because we're in an effort to support her in the classroom. Support her with technology issues. Support her in the manner of any issue that she needs. To support her and accommodate her . . . classroom requests.

Ms. Dimitracopoulos is one of the only teachers that teaches all five classes in one classroom. Other teachers teach and they move. Ms. Dimitracopoulos approaches me that she cannot carry or lift heavy test papers. I have [someone] assist her. And [I] accommodate her in every possibility of support because it is our position that if a teacher needs to learn new teaching methods, we're to [give] support. I've done that specifically this year and last year.

So I'd like to just state that it's not a position where we don't want Ms. Dimitracopoulos to receive all that she can. We've been working closely with her in these situations.

Hr'g Tr. 41:15-42:11.

## III.    Facts

The following facts taken from the amended complaint are assumed to be true for the

purposes of deciding this motion. *See* Am. Compl., ECF No. 16.

Plaintiff has been a high school teacher at the DOE's Flushing High School ("Flushing") since 1962. *Id.* ¶ 12, 22.  At age 73, she is the oldest, highest paid and most senior member of the English department. *Id.* ¶ 11, 23.

### A. 2009 Litigation

In 2009 plaintiff filed a federal lawsuit against the DOE based on age discrimination and retaliation. *See Dimitracopulos v. City of New York, et al.*, 09-CV-01415, filed Apr. 6, 2009.  It was settled in November 2010. *Id.*, ECF No. 19; Am. Compl. ¶ 24.

### B. 2011-2012 School Year

During the 2011-2012 school year, plaintiff was rated "unsatisfactory" on her annual performance evaluation by defendant Carl Hudson, then principal of Flushing. Am. Compl. ¶ 26. Plaintiff asserts the rating was given with the "intention of excessing her from the school based on the anticipated closing of Flushing." *Id.* ¶ 26.  Flushing was not closed and plaintiff was not excessed.  *Id.*  She appealed the unsatisfactory rating. *Id.* ¶ 35.  It was sustained in July 2013 after a hearing by the DOE.  *Id.*  Notice of the DOE's appeal determination was sent to the incorrect address and not timely received by plaintiff. *Id.*

In September 2012, principal Hudson resigned and defendant Magdalen Radovich replaced him. *Id.* ¶ 27

### C. 2012-2013 School Year

On May 1, 2013, plaintiff received a "satisfactory" rating based on a formal observation conducted by Radovich.  Later that month, on May 17, 2013, she received an "unsatisfactory" rating after an informal observation conducted by defendant assistant principal Gisele Morgan. *Id.* ¶ 28.

6

In late May 2013, plaintiff filed a grievance against principal Radovich requesting that material from the 2011-2012 school year be removed from her file because it was inserted after the calendar year ended. *Id.* ¶ 29. Plaintiff won the grievance and the material was removed. *Id.*

Shortly thereafter, Radovich scheduled another formal observation for June 5, 2013; plaintiff received an "unsatisfactory" rating. *Id.* Plaintiff alleges that the rating was given without justification and that the corresponding observation report was full of factual inaccuracies. *Id.*

At the end of the 2012-2013 school year, plaintiff received an "unsatisfactory" annual rating from Radovich. *Id.* Soon after, Radovich resigned. *Id.* ¶ 33.

**D. 2013-2014 School Year**

Defendant Dr. James Brown became principal of Flushing in September 2013. *Id.*

Based on her "unsatisfactory" ratings, *see supra* III.C., plaintiff was denied per session employment by the DOE from September 2013 through December 2013. *Id.* ¶ 32. "Per session" work is "a job performed by teachers before or after school hours, such as supervising or leading extracurricular activities or offering extra academic help." *See Sotomayor v. City of New York,* 862 F.Supp.2d 258 (E.D.N.Y. 2012); Hr'g Tr. 21:18-20; 23:3-10. Specifically, plaintiff was temporarily prevented from continuing her per session work with at risk youth in the YABC academic program, which she had participated in for over seven years. Hr'g Tr. 40:12-18.

Three changes were made to plaintiff's program by assistant principal Morgan during the 2013-2014 school year. *Id.* ¶ 34. They included changes to her schedule that required her to arrive later and leave later. She alleges that no younger member of the English department was subjected to "such major changes to their program." *Id.*

Plaintiff broke her shoulder and was absent for several days during the 2013-2014 school year. Hr'g Tr. 41:1-5. She alleges that she was challenged for being "excessively absent for self-treated days despite presenting medical documentation legitimately justifying her absences." *Id.* ¶ 40. Principal Brown, she contends, sent her to an involuntary medical examination in May 2013 and "threatened to take her off the payroll." *Id.* ¶ 39. The DOE medical bureau promptly returned her to work.

Since filing the instant amended complaint on January 31, 2014, plaintiff has received several negative ratings based on observations by assistant principal Morgan. She alleges that Morgan's comments under the new observation system are inaccurate, defamatory, and offensive. Am. Compl. ¶¶ 36-34; Hr'g Tr. 5:9-20.

On May 16, 2014, plaintiff received an observation report from principal Brown stating, "failure to perform at an effective level may lead to an adverse rating as well as lead to your termination." *Id.* ¶ 41.

### E.  Co-Teaching

Plaintiff alleges that in the past three consecutive school years assistant principal Morgan has repeatedly assigned her to co-teach classes from the special education department. *Id.* ¶ 30. She asserts that these assignments violated the DOE union contract and State law. *Id.*

## IV.  Standard of Review

In deciding a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure, well-pleaded facts are accepted as true and considered in the light most favorable to the non-moving party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236-37 (1974); *See, e.g., Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). To withstand a Rule 12(b) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Whether a complaint states a plausible claim to relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d at 180.

In employment discrimination cases, the plausibility standard applies in conjunction with the pleading standards set forth in *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, (2002). *See Twombly,* 550 U.S. at 547 ("This analysis does not run counter to *Swierkiewicz* . . . . Here, the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *Iqbal,* 129 S.Ct. at 1953 ("Our decision in *Twombly* expounded the pleading standard for all civil actions, and it applies to antitrust and discrimination suits alike." (internal quotation marks and citations omitted)); *Arista Records LLC v. Doe,* 604 F.3d 110, 119–121 (2d Cir.2010) (applying *Swierkiewicz, Twombly,* and *Iqbal*). Although "an employment discrimination plaintiff need not plead a prima facie case of discrimination," to survive a motion to dismiss, the claim must show "the pleader is entitled to relief." *Swierkiewicz,* 534 U.S. at 515.

In determining the adequacy of the complaint, any written instrument attached as an exhibit or incorporated in the complaint by reference, as well as integral documents upon which the complaint relies will be considered. *Subaru Distrib. Corp. v. Subaru of Am., Inc.,* 425 F.3d 119, 122 (2d Cir. 2005).

In deciding what "is plausible on its face" and in "drawing on . . . judicial experience and common sense," the court may take into account what it learns about the dispute in colloquy with

counsel and in questioning parties under oath. *Ashcroft v. Iqbal*, 129 S.Ct. at 1949; *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d at 180.

## V.      Claims Against the City Dismissed

All claims against the City of New York are dismissed. The City and the DOE are separate legal entities; and the City cannot be held liable for the alleged torts of DOE employees. *See Perez v. City of New York,* 837 N.Y.S.2d 571, 572 (1st Dep't 2007) ("The City cannot be held liable for [torts allegedly committed by the DOE and its employees].")); *Falchenberg v. New York Dep't of Educ.,* 375 F.Supp.2d 344, 347 (S.D.N.Y. 2005) ("[T]he City and DOE are separate and distinct entities . . . . In the absence of any allegations demonstrating participation by the City, the complaint fails to state a cause of action against it."). Because plaintiff alleges acts committed by the DOE and its employees, the City of New York is not a proper party.

## VI.     Statute of Limitations

### A. Statutes of Limitations

#### 1.  ADEA

"The statute of limitations under the ADEA is 300 days from the occurrence of the alleged unlawful activity, regardless of when it is filed with the state's human rights administrative agency." *Thorpe v. Piedmont Airlines, Inc.*, 926 F.Supp.2d 453, 462 (2013); 29 U.S.C. § 626(d)(1)(B); *see also Brodsky v. City Univ. of N.Y.,* 56 F.3d 8, 9 (2d Cir. 1995); *Reinhard v. Fairfield Maxwell, Ltd.,* 707 F.2d 697, 700 (2d Cir. 1983).

#### 2.  Section 1983

The statute of limitations for actions under § 1983 is the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits. *Dory v. Ryan,* 999 F.2d 679, 681 (2d Cir. 1993) (*citing Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d

254 (1985)). "Since section 214(5) of New York's Civil Practice Law and Rules provides a three-year statute of limitations for personal injury actions, the statute of limitations for actions brought in this Court pursuant to § 1983 is three years." *Thomas v. New York City Dep't of Educ.*, 938 F.Supp.2d 334, 349 (E.D.N.Y. 2013); *Owens v. Okure*, 488 U.S. 235, 250–51 (1989); *Paige v. Police Dep't of Schenectady*, 264 F.3d 197, 199, n.2 (2d Cir. 2001).

### 3. NYSHRL & NYCHRL

In general, the statute of limitations under the NYSHRL and the NYCHRL is three years. N.Y. C.P.L.R. 214(2); N.Y.C. Admin. Code § 8–502(d); *Koerner v. State of New York,* 62 N.Y.2d 442 (1984) (the three year statute of limitations applies to discrimination claims under the NYSHRL).

New York law provides for a shorter statute of limitations for claims against schools, school districts, and boards of education. N.Y. Educ. Law § 3813(2–b) ("[N]o action or special proceeding shall be commenced against any [school, school district, board of education, or an 'officer of a school district, board of education, board of cooperative educational services, or school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four'] more than one year after the cause of action arose.").

The shorter statute of limitations also applies to an "officer of a school district, board of education, board of cooperative educational services, or school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four." N.Y. Educ. Law § 3813(1). Principals and other school administrators are not officers of a board of education. Unless these administrators are employed at the special schools specified in the statute, claims against them are not subject to the one year statute of limitations. *See Richards v. Calvet,* No. 99 Civ. 12172, 2005 WL 743251, at *13 (S.D.N.Y. Mar. 31, 2005) (section 3813(1)

does not apply to those claims against school principal because he is not an "officer" within the meaning of the statute); *see also Fierro v. City of New York,* 591 F.Supp.2d 431, 447 (S.D.N.Y. 2008) (plaintiff's claims against the school principal are not barred by one-year statute of limitations because the principal "is not an officer within the meaning of section 3813"), *rev'd on other grounds,* 341 Fed.Appx. 696 (2d Cir. 2009).

Plaintiff's claims against the DOE under the NYSHRL and the NYCHRL are subject to the one year statute of limitations. *Id.; Amorosi v. South Colonie Ind. Cent. Sch. Dist.,* 9 N.Y.3d 367 (2007) ("[T]he one-year limitation prescribed in Education Law § 3813(2–b) should govern discrimination claims against a school district.").

The shorter statute of limitations does not apply to plaintiff's City and State law claims against individual defendants Hudson, Radovich, Morgan, or Brown.

### 4. Continuing Violations Doctrine

Under the continuing violations doctrine, when a plaintiff experiences a "continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Gomes v. Avco Corp.,* 964 F.2d 1330, 1333 (2d Cir. 1992); *see also Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir. 2001).

In *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court established that "discrete discriminatory acts"—such as termination, failure to promote, denial of transfer, or refusal to hire—"are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113-14. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.*

12

For Federal and State law purposes the "continuing violation" doctrine applies only to harassment claims.  It is inapplicable to plaintiff's present discrimination and retaliation claims.

New York courts have held that the pre-*Morgan*, more generous continuing violations doctrine continues to apply to discrete acts of employment discrimination under NYCHRL. *See Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 35 (1st Dep't 2009).  Time-barred discrete acts can be considered timely "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (internal citations and quotations omitted).

### B.  Plaintiff's Claims Are Partially Time Barred

Plaintiff filed a charge of discrimination with the EEOC on June 26, 2013.  The instant action was commenced on January 31, 2014.

Any discrete discriminatory and retaliatory actions that occurred prior to August 30, 2012 are outside the scope of the ADEA 300-day statute of limitations.  Claims brought under NYSHRL and NYCHRL against the DOE based upon discrete acts that occurred before January 31, 2013 are time barred.

The allegedly discriminatory "unsatisfactory" rating for the 2011-2012 school year is a discrete act occurring before January 31, 2013. *See Valtchev v. City of New York*, 400 Fed.Appx. 586, 589 (2d Cir. 2010) (holding that negative evaluations are discrete acts which do not trigger the continuing violation exception); *Siddiqi v. N.Y.C Health & Hosps. Corp.*, 572 F.Supp.2d 353, 366 (S.D.N.Y. 2008) ("Each negative performance evaluation is a discrete act."); *Smith v. N.Y.C. Dep't of Educ.*, 09 Civ. 9256, 2011 WL 5118797, at *5 (S.D.N.Y. 2011) (holding that "an

13

unsatisfactory rating following a classroom observation" is a discrete act for the purposes of the continuing violations doctrine).

Even under NYCHRL's more lenient continuing violations doctrine, the 2011-2012 rating is not part of a continuing policy of discrimination against Dimitracopoulos by the defendant Principal Hudson. He is alleged to have discriminated against plaintiff by giving her a negative rating at the close of the 2011-2012 school year with the "intention of excessing her from the school." Am. Compl. ¶ 26. He resigned shortly thereafter. Later evaluations and letters to file by separate individuals are not part of the same continuing pattern of discriminatory conduct by a prior principal. *See Donlon v. Bd. of Educ. of Greece Cent. Sch. Dist.*, No. 06–CV– 6027, 2007 WL 108470, at *4 (W.D.N.Y. Jan. 12, 2007) (the continuing violation doctrine was inapplicable where plaintiff "asserts that she was subject to a number of *separate* evaluations and classroom observations during a four-year period made by *distinct* individuals, *each of whom* is alleged to have discriminated against her," since each event constituted a discrete act (emphasis added)).

Plaintiff's receipt of a year-end annual rating of "unsatisfactory" for the 2011-2012 school year from Principal Hudson is time-barred for purposes of plaintiff's ADEA, NYSHRL, and NYCHRL claims against the DOE.

## VII.   Federal Age Discrimination Claims

### A.   Law

To establish a prima facie case of age discrimination under the ADEA and section 1983, a plaintiff must show that: (1) she was within the protected age group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment

action occurred under circumstances giving rise to an inference of discrimination. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003).

An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Weeks v. New York State (Div. of Parole),* 273 F.3d 76, 85 (2d Cir. 2001). To be materially adverse, it must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Sanders v. New York City Human Resources Administration,* 361 F.3d 749, 755 (2d Cir. 2004).

Under the ADEA a claimant must demonstrate that age was not just a motivating factor behind the adverse action, but the "but-for" cause. *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167 (2009).

**B. Application of Law to Facts**

As to the DOE, only those acts which occurred after August 30, 2012 are timely under the ADEA. *See supra* Part VI.B.

**1. Limited Adverse Employment Action Adequately Alleged**

Plaintiff alleges that the following constituted "adverse employment actions" taken against her: (1) the assignment of co-taught classes in violation of her union contract and state law; (2) changes to her program requiring her to arrive earlier and leave later during the day; (3) the mailing of an appeal determination to the wrong address; (4) referral to an involuntary medical evaluation; (5) issuance of unfounded negative employment evaluations; and (6) temporary denial of per session employment. *See generally* Am. Compl., ECF No. 16.

The only allegations that rise to the level of adverse employment actions are those concerning the deprivation of plaintiff's per session employment.

Scheduling and assignment issues involving course loads are generally not considered materially adverse employment actions. *Aspilaire v. Wyeth Pharmaceuticals, Inc.,* 612 F.Supp.2d 289, 304 (S.D.N.Y. 2009). If they become so burdensome as to constitute a departure from normal academic practice, they may be actionable. The present case represents normal, only slightly burdensome reassignments of the kind required for appropriate flexibility in teaching loads.

Allegations that plaintiff's co-teaching assignments violated the DOE-union contract and state law do not constitute employment discrimination. *See Gibbs v. Consolidated Edison Co.,* 714 F.Supp. 85, 92 (N.Y. 1989). These are garden-variety academic organizational changes, grieveable under union agreements.

Plaintiff's one-time referral to an involuntary medical examination is not grounds for a claim of age discrimination, particularly where, as here, plaintiff was suffering from a broken shoulder and absent for several days for medical reasons. *See* Hr'g Tr. 41:1-12; Am. Compl. ¶¶ 39-40.

Criticism of an employee in the course of evaluating and correcting her work is not, in itself, a materially adverse employment action. *See Weeks v. N.Y. State Div. of Parole,* 273 F.3d 76, 86 (2d Cir. 2001) (holding that notice of discipline and counseling memo insufficient to constitute adverse employment action). The purpose of such evaluations is to help improve a teacher's work. Hr'g Tr. 41:15-11. A thin-skinned worker's reaction to criticism by a supervisor will not support a claim of age discrimination unless it is outside the bounds of appropriate supervision—not the case here. *See, e.g., Browne v. City Univ. of N.Y.,* 419 F.Supp.2d 315, 333–34 (E.D.N.Y. 2005) ("A negative evaluation alone, absent some accompanying adverse result such as demotion, diminution of wages, or other tangible loss, does not constitute an adverse

employment action."); *see also, e.g., Fairbrother v. Morrison,* 412 F.3d 39, 56–57 (2d Cir. 2005)

(an unsatisfactory evaluation did not constitute an adverse employment action where plaintiff did

not assert that evaluation negatively altered her compensation, benefits, or job title); *Sanders v.*

*N.Y.C. Human Res. Admin.,* 361 F.3d 749, 756 (2d Cir. 2004) (jury could reasonably find

performance evaluation and its critical addendum did not constitute an adverse employment

action where plaintiff "offered no proof that this evaluation had any effect on the terms and

conditions of her employment"; plaintiff was not entitled to judgment as a matter of law);

*Solomon v. Southampton Union Free Sch. Dist.,* No. 08–CVI822, 2011 WL 3877078, at *9

(E.D.N.Y. Sept. 1, 2011) (teacher failed to make out a prima facie case under Title VII since she

"failed to provide *any* evidence that her negative evaluation affected her employment in any

way, and therefore it is not an adverse employment action").

    "[N]egative employment evaluation letters may . . . be considered adverse," if they

trigger other negative consequences in the terms and conditions of the plaintiff's employment,

qualifying as a materially adverse. *Treglia v. Town of Manlius,* 313 F.3d 713, 720 (2d Cir.

2002).

    Plaintiff alleges that the negative year-end ratings and observations by Hudson,

Radovich, Morgan, and Brown were not designed to improve her teaching skills, but were

intended to lead to the loss of her position in the English department at Flushing.  She asserts that

unjustified negative evaluations by Radovich and Morgan during the 2012-2013 school year

triggered her loss of valuable per session assignments between September 2013 and December

2013—work which she had engaged in regularly for over seven years with retention rights.  Hr'g

Tr. 23:3-25; Compl. ¶ 31.

A jury could plausibly find the temporary loss of plaintiff's "per session" employment, together with other available evidence of animus based on age, materially adverse for purposes of plaintiff's federal discrimination claims against the DOE, Radovich, and Morgan. *See Herling v. New York City Dep't of Educ.*, 13-CV-5287, 2014 WL 1621966 (E.D.N.Y. Apr. 23, 2014) ("Denying an employee the opportunity to work overtime, comp time, or additional per-session employment may . . . constitute an adverse employment action."); *Demoret v. Zegarelli,* 451 F.3d 140, 151 (2d Cir. 2006) (preventing plaintiff from earning overtime and comp time and requiring only the plaintiff to request overtime in writing may constitute adverse employment action).

Plaintiff has not adequately connected defendant Hudson's unsatisfactory rating with other negative effects to the terms and conditions of her employment. She was not excessed, Flushing did not close, and she continued to participate in the YABC program on a per session basis during the 2012-2013 school year. Hr'g Tr. 26:9-21. She has also failed to allege any negative consequences stemming from Brown's allegedly discriminatory observation. Plaintiff received Brown's negative observation report on report on May 16, 2014, by which time she had resumed participation in the YABC program. She has alleged no adverse changes to the terms and conditions of her employment since May 16, 2014. *See* Am. Compl., May 27, 2014, ECF No. 16.

Plaintiff's federal discrimination claims against Hudson and Brown are dismissed.

### 2. Inference of Discrimination

To survive a motion to dismiss, the plaintiff "must plausibly plead . . . that the circumstances surrounding an adverse employment action give rise to an inference of

discrimination." *Kirkweg v. New York City Dep't of Educ.*, No. 12-cv-2635, 2013 U.S. Dist.
LEXIS 55042 at * 11 (S.D.N.Y. April 4, 2013).

"A showing of disparate treatment—that is, a showing that the employer treated plaintiff
'less favorably than a similarly situated employee outside his protected group'—is a recognized
method of raising an inference of discrimination for purposes of making out a prima facie case."
*Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir.2003).

Plaintiff alleges that she was given unwarranted negative ratings by Radovich and
Morgan in an attempt to remove her from the school, which prevented her from engaging in per
session employment.  She claims that younger teachers at Flushing were not subjected to the
same negative treatment by defendants.  *See* Hr'g Tr. 18:25-1:25, 33:13-17.

Alleged facts in the amended complaint are sufficiently plausible as federal age
discrimination claims against the DOE, Radovich, and Morgan.

Plaintiff's employment discrimination claim will survive if she is able to show that
similarly situated younger English teachers were deliberately treated differently in their
evaluations and related per session employment privileges as part of a campaign to discriminate
against plaintiff because of her age.  As of now the complaint states only that other teachers'
scheduling changes were not as bad as those experienced by plaintiff.  Am. Compl. ¶ 34; Hr'g
Tr. 16:12-21, 18:25-19:25.  Her scheduling changes were minor.  Without more, she cannot
support an inference of discrimination.

If the evidence shows that defendants were attempting to push plaintiff out of Flushing
because of her seniority and correspondingly high salary, rather than her age, she does not have a
federal cause of action under the ADEA unless she is able to demonstrate a cognizable disparate-
impact claim.  *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611, 113 S. Ct. 1701, 1706, 123 L.

Ed. 2d 338 (1993) ("When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is."); *see also Smith v. City of Jackson, Miss.*, 544 U.S. 228, 240, 125 S. Ct. 1536, 1544, 161 L. Ed. 2d 410 (2005) ("[T]he scope of disparate-impact liability under ADEA is narrower than under Title VII.").

These issues of fact may be resolved in a motion for summary judgment.

## VIII.   State Age Discrimination Claims

Discrimination claims brought under NYSHRL are analyzed under the same standard as those governing the ADEA. *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) (age-discrimination claims under the ADEA and NYSHRL are analyzed under the same standard).

Only those acts which occurred after January 31, 2013 are timely as to the DOE. *See supra* Part VI.B. Plaintiff's discrimination claims against the DOE may not be premised on the negative 2011-2012 year-end rating by Hudson.

Claims against Hudson, Radovich, Morgan, and Brown are not time barred. *See supra* Part VI.A. Defendants may be held individually liable under state law. *See, e.g., Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995) ("[A] defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NYS]HRL.").

For the reasons stated above, *see supra* Part VII.B.1, plaintiff has failed to state a plausible claim of discrimination against Hudson or Brown.

Plaintiff states a valid claim for age discrimination against the DOE, Radovich, and Morgan based on unwarranted negative evaluations, resulting in the temporary termination of her per session employment. *See supra* Part VII.

## IX.   City Age Discrimination Claims

Claims under the NYCHRL are generally to be construed more liberally under their federal and state counterparts, which serve as a "floor below which the City's Human Rights law cannot fall." *Williams v. New York City Housing Auth.,* 61 A.D.3d 62, 66–67 (1st Dep't 2009).

In light of the broad purpose of the NYCHRL, plaintiff need not show that an employment action was "materially adverse," as it must be for federal and state claims. *Id.* at 34 (holding there is no material adversity requirement for a retaliation claim under the NYCHRL); *Margherita v. FedEx Exp.,* No. 07 CV 4826, 2011 WL 5024577, at *8 (E.D.N.Y. Oct. 20, 2011) (no material adversity requirement for a discrimination claim under the NYCHRL). Plaintiff must only show she was treated differently from others in a way that was more than trivial, insubstantial, or petty. *Sotomayor v. City of New York*, 862 F.Supp.2d 258 (E.D.N.Y. 2012).

Even under the NYCHRL, minor scheduling changes, grievable co-teaching assignments, negative evaluations, mailing an appeal determination to the wrong address, and a single involuntary medical examination after multiple medical absences do not rise to the level of an adverse employment action.

Plaintiff fails to state a plausible NYCHRL claim against Hudson or Brown for age discrimination. *See supra* Part VII.B.1.

As indicated above plaintiff has adequately alleged that she was given negative ratings by Radovich and Morgan in an attempt to remove her from Flushing because of her age and that those unwarranted ratings temporarily prevented her from engaging in per session employment.

Her age discrimination claims under NYCHRL against the DOE, Radovich and Morgan remain.
*See supra* Part VII.

## X.     Retaliation Claims

### A. Law

In order to establish a *prima facie* case of retaliation under the ADEA, the NYSHRL, and
section 1983, "an employee must show (1) participation in a protected activity known to the
defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection
between the protected activity and the adverse employment action." *Feingold v. New York*, 366
F.3d 138, 156 (2d Cir. 2004); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d
Cir. 2010). Unlike in discrimination claims, an adverse employment action "need not affect the
terms and conditions of a plaintiff's employment for purposes of a retaliation claim." *Fincher v.
Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 n. 1 (2d Cir. 2010). Rather:

> [P]laintiff must show that a reasonable employee would have found the
> challenged action materially adverse, which in this context means it well might
> have dissuaded a reasonable worker from making or supporting a charge of
> discrimination. We speak of *material* adversity because we believe it is important
> to separate significant from trivial harms.

*Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006) (emphasis added).

The essential elements of a retaliation claim under the NYCHRL are the same: "To
prevail on a NYCHRL retaliation claim, a plaintiff must show: 1) he engaged in a protected
activity; 2) his employer was aware of that activity; 3) he suffered an action that would be
reasonably likely to deter a person from engaging in a protected activity; and 4) that there was a
causal connection between the protected activity and the action." *Pilgrim v. McGraw–Hill
Companies, Inc.,* 599 F.Supp.2d 462, 469 (S.D.N.Y. 2009); *see also Dixon v. Int'l Fed. of
Accountants,* 416 Fed.Appx. 107, 110 n.1 (2d Cir. 2011) (same). Unlike under federal and state
law, the employer's actions under the City Code need not be "materially adverse" to the plaintiff,

but merely "reasonably likely to deter a person from engaging in protected activity." N.Y.C.

Admin. Code § 8–107(7); *Fincher,* 604 F.3d at 723; *Williams,* 872 N.Y.S.2d at 34 & n. 12.

### B. Application of Law to Facts

Plaintiff's amended complaint asserts that her SDHR filing on June 17, 2013, and her

initiation of the instant litigation are protected activities for which she has been retaliated against.

Specifically, she alleges the negative 2012-2013 ratings she received from Morgan and

subsequent deprivation of her per session employment were in retaliation for her SDHR filing;

the "defamatory" 2013-2014 evaluations by Morgan and Brown were in retaliation for the

present lawsuit. Pls. Mem. at 8-9; Am. Compl. ¶¶ 31-41. A jury could plausibly find the

complained of conduct materially adverse for the purposes of a retaliation claim and infer a

causal connection based on the "close temporal proximity between the protected activity and the

retaliatory action." *See Burlington N. & Santa Fe Ry. Co.,* 548 U.S. at 68.

Plaintiff also engaged in protected activity when she filed a lawsuit based on age

discrimination and retaliation in 2009, which resulted in a settlement in November 2010. But,

she has failed to assert any facts from which a causal connection between the filing of her 2009

lawsuit and the allegedly adverse actions complained of here can reasonably be inferred.

First, the temporal proximity between the 2009 lawsuit and the alleged adverse actions

first suffered by plaintiff in June 2012 is too attenuated to raise a reasonable inference of a causal

connection. *Id.* ("a gap of more than one year between protected activity and retaliatory action is

generally insufficient"). Second, none of the DOE defendants in the instant action were actors in

the previous lawsuit. *See Dimitracopulos v. City of New York, et al.*, 09-CV-01415, filed Apr. 6,

2009. Even under the more liberal standard afforded under the NYCHRL, plaintiff has failed to

state a plausible claim for retaliation based on her filing of the 2009 lawsuit against the DOE.

23

## XI.   Surviving Claims

The defendants' motion to dismiss the complaint is granted in part and denied in part.

Subject to a motion for summary judgment, the following claims remain to be tried premised on

the following adverse actions:

| | |
|---|---|
| **Radovich** | **Discrimination claims:** Section 1983, NYSHRL, and NYCHRL claims premised on plaintiff receiving unsatisfactory ratings during the 2012-2013 school year with the intent to remove her from the school and prevent her from engaging in per session employment. |
| | **Retaliation claims:** Section 1983, NYSHRL, and NYCHRL claims premised on plaintiff receiving an "unsatisfactory" rating for the 2012-2013 school year in retaliation for her filing an SDHR complaint on June 17, 2013. |
| **Morgan** | **Discrimination claims:** Section 1983, NYSHRL, and NYCHRL claims premised on plaintiff receiving negative evaluations during the 2012-2013 and 2013-2014 school years with the intent to remove her from the school and prevent her from engaging in per session employment. |
| | **Retaliation claims:** Section 1983, NYSHRL, and NYCHRL claims premised on plaintiff receiving "defamatory" ratings during the 2013-2014 school year in retaliation for (1) her SDHR filing on June 17, 2013; and (2) the instant litigation. |
| **Brown** | **Retaliation claims:** Section 1983, NYSHRL, and NYCHRL claims premised on plaintiff receiving negative observations during the 2013-2014 school year for (1) her SDHR filing on June 17, 2013; and (2) the instant litigation. |
| **DOE** | **Discrimination claims:** ADEA, NYSHRL, and NYCHRL claims premised on plaintiff receiving unwarranted negative evaluations during the 2012-2013 school year; the resulting denial of per session employment; and defamatory evaluations during the 2013-2014 school year intended to facilitate her termination. |
| | **Retaliation claims:** ADEA, NYSHRL and NYCHRL claims premised on plaintiff (1) receiving an "unsatisfactory" rating for the 2011-2012 school year and being denied per session employment in retaliation for her filing a SDHR on June 17, 2013; and (2) receiving negative observations and evaluations during the 2013-2014 school year in retaliation for the instant litigation. |

All other claims are dismissed.

## XII.   Pretrial and Trial Instructions

The magistrate judge is respectfully requested to expedite discovery.  Any motions for summary judgment on the remaining claims shall be made returnable October 1, 2014.

Depending on the outcome of any summary judgment motions, trial will commence on November 17, 2014 at 10:00 a.m.  *See* Order of May 14, 2014, for jury selection and *in limine* hearing instructions.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: June 2, 2014
        Brooklyn, New York

25